IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BENJAMIN CRISANTOS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-2932 |
| DR. MOUBAREK, et al., | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss filed by Defendants Warden J. R. Bell, Cutter, Duerr, Eirich, Felix, Foote, Hamilton, Hershberger, Jinkins, Captain Johnston, Joseph, Dr. Moubarek, Plauger, Assistant Warden Rivera, Shaikh, and Shobe (collectively, "Defendants") (ECF No. 13). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion.

**I.   BACKGROUND**

Plaintiff Benjamin Crisantos' Complaint alleges that he received inadequate medical care while incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). (Compl. at 5, ECF No. 1).[1] Specifically, Crisantos alleges that he has "been denied proper timely medical treatment subjecting [him] to imminent [danger] and other staff [misconduct]." (Id.).

---

[1] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

On October 3, 2019, Crisantos filed this lawsuit against Defendants. (ECF No. 1). In his Complaint, which Crisantos titles a "Bivens Action,"[2] (Compl. at 1), he alleges that Defendants: (1) inappropriately responded to his sick calls; (2) falsely imprisoned him; (3) exhibited deliberate indifference toward him; (4) subjected him to imminent danger by housing him with differently classified inmates; and (5) denied him religious services and psychological services. (Id. at 5–8). Crisantos seeks immediate relief from imminent danger, medical treatment for his injuries, $1,000,000 for compensation and damages, and compensation for future damages. (Id. at 9).

## II.   DISCUSSION

### A.   Crisantos' Motion for Extension of Time

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on March 6, 2020. (ECF No. 13). Following Defendants' Motion, Crisantos filed a series of motions for extension of time. The Court received Crisantos' first Motion for Extension of Time on March 30, 2020, twenty-one days after Defendants' Motion. (ECF No. 15). In it, he sought an additional thirty days to respond due to a lockdown put in place because of the novel coronavirus. The Court granted Crisantos' Motion on April 3, 2020. (ECF No. 16). Ninety-nine days later, on July 7, 2020, the Court received a second Motion for Extension of Time by Crisantos, this time seeking an additional ninety days to respond. (ECF No. 21). Before the Court could rule on that Motion, the Court received Crisantos' third Motion for Extension of Time on September 14, 2020, again seeking an additional

---

[2] The Court presumes that Crisantos is referencing the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

ninety days. (ECF No. 22). The Court granted Crisantos' Motion on September 15, 2020, granting him an additional ninety days from that date to respond to Defendants' Motion.

Finally, ninety-one days later, on December 15, 2020, the Court received Crisantos' fourth Motion for Extension of Time, seeking ninety additional days to respond to Defendants' Motion. (ECF No. 24). At that time, 284 days had passed since Defendants' filed their Motion. Crisantos—who clearly possesses the ability to file documents with the Court—does not provide any justification for his most recent request in his Motion.

In light of the extraordinary amount of time that has passed since Defendants' filing, and Crisantos' failure to provide any specific justification for his ongoing failure to respond, the Court will deny Crisantos' fourth request for an extension of time. See Wheatley v. Cohn, No. GLR-13-3850, 2014 WL 2452606, at *2 (D.Md. May 30, 2014) ("While Federal Rule of Civil Procedure 6(b)(1)(B) gives the Court discretion to grant a reprieve to out-of-time filings that were delayed by 'excusable neglect,' the circumstances here do not warrant an extension."); see also Covington v. MCIC, Inc., 627 F.App'x 268, 271 (4th Cir. 2016) ("[T]he district court did not abuse its discretion in failing to grant plaintiffs a third extension of time."); Dancy v. Univ. of N.C. at Charlotte, No. 3:08-CV-166-RJC-DCK, 2009 WL 2424039, at *2 (W.D.N.C. Aug.3, 2009) ("Although pro se litigants are given liberal treatment by courts, even pro se litigants are expected to comply with time requirements and other procedural rules 'without which effective judicial administration would be impossible.'" (quoting Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989))).

**B.      Defendants' Motion to Dismiss**

Although Defendants' Motion is unopposed, the Court must review the papers to ensure that dismissal is proper. See Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 (4th Cir. 2014). Thus, the Court will review the Motion to determine if it contains sufficient grounds to dismiss Crisantos' Complaint.

**1.      Conversion**

Defendants styled their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

4

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise satisfactorily the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that

the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Crisantos was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Crisantos about the Motion and the need to file an opposition. (See Rule 12/56 Letter, ECF No. 14). Crisantos has failed to file an opposition or otherwise request more time to conduct discovery. Because the Court will consider documents outside of Crisantos' Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

### 2. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact

7

arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3. Analysis

Although Crisantos describes his action as a "Bivens Action,"[3] (Compl. at 1), his claims may also be construed as arising under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. ("FTCA"). The Court will evaluate the sufficiency of Crisantos' Complaint under both causes of action.

#### a. FTCA Claims

With respect to suits against the federal government, the doctrine of sovereign immunity protects the United States from liability, except where it has expressly waived its immunity to suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988). The FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees." FDIC v. Meyer, 510 U.S. 471, 475 (1994). "Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995).

---

[3] A Bivens action is a judicially-created monetary remedy designed to vindicate violations of constitutional rights by federal actors in their individual capacity. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395–97 (1971).

As an initial matter, a tort action against the United States "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Crisantos has made no allegation that he complied with this requirement under the FTCA.

In addition, tort liability is available against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Where "FTCA claims relate to allegedly deficient health care, [plaintiffs must] comply with the requirements of the Maryland Health Care Malpractice Claims Act ('HCMCA'), which establishes the state procedure for medical malpractice actions." Gambino v. Hershberger, No. TDC-17-1701, 2019 WL 1300856, at *8 (D.Md. Mar. 20, 2019). Under the HCMCA:

> [B]efore filing a medical malpractice tort claim "against a health care provider for medical injury," a plaintiff must submit the claim within 90 days to the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") to undergo arbitration. The plaintiff must submit with the claim "a certificate of qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(a)(1)(i), (b)(1)(i). A medical malpractice action filed in either state or federal court that fails to meet this requirement will be dismissed without prejudice. Id. § 3-2A-04(b)(1)(i); see Willever v. United States, 775 F.Supp.2d 771,777 (D.Md. 2011). Complying with HCMC's requirements is "not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit," such that a plaintiff cannot litigate a claim at all without having done so. Willever, 775 F.Supp.2d at 777, 785.

Id. Moreover, "a long line of authority in this Court has held that the provisions of the [HCMCA] with respect to the filing of a claim and expert certificate in the HCADRO apply

with equal force to claims against physicians employed by the United States." Wilson v. Gottlieb, 821 F.Supp.2d 778, 791 n.18 (D.Md. 2011) (citing cases). Here, Crisantos makes no allegation in his Complaint regarding his compliance with the requirements of the HCMCA, and has not filed an opposition to Defendants' Motion.

The FTCA's waiver of sovereign immunity is narrow and only permits suit against the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In order to assert a claim of medical negligence against the United States in this Court, plaintiffs are required to comply with the procedural requirements of the FTCA and the HCMCA. Because Crisantos has failed to do so, the FTCA's waiver of sovereign immunity does not extend to the claims he asserts in this action. In addition, the Court has reviewed the legal arguments raised in Defendants' unopposed Motion regarding the substantive deficiencies in Crisantos' FTCA claims and concludes that Defendants' arguments are meritorious. (See Defs.' Mot at 20–24). Accordingly, to the extent Crisantos sought to assert claims under the FTCA, those claims must be dismissed.

        **b.**    **Bivens Claims**

Bivens "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006) (quoting Carlson v. Green, 446 U.S. 14, 18 (1980)). In order to assert a Bivens claim in federal court, inmates are first required to exhaust all inmate grievance procedures. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Gibbs v. Bureau of Prison Office, 986

F.Supp. 941, 943–44 (D.Md. 1997) (dismissing Bivens claim based on failure to fully exhaust administrative remedies).

As with the FTCA, Defendants raise the affirmative defense that Crisantos has failed to exhaust his administrative remedies. If Crisantos' claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. §1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532; see also Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be

11

pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Anderson v. XYZ Corr. Health Services, Inc., 407 F.2d 674, 682 (4th Cir. 2005).

A claim that has not been exhausted may not be considered by this Court. See Bock, 549 U.S. at 220. In other words, exhaustion is mandatory. Ross v. Blake, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. Ross, 136 S.Ct. at 1856 (citing Miller v. French, 530 U.S. 327, 337 (2000)).

An inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The Federal Bureau of Prisons ("BOP") established the Administrative Remedy Program ("ARP") for inmates to resolve concerns related to their confinement. See 28 C.F.R. § 542.10 et seq. Inmates must first attempt informal resolution with staff. Id. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint using the appropriate form within twenty calendar days of the date of the occurrence on which the complaint is based. Id. § 542.14(a). If an inmate is not satisfied

with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. Id. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. Id. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. See Woodford, 548 U.S. at 90; see also Gibbs, 986 F.Supp. at 943–44 (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. See Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir. 2001), overruled on other grounds by Porter, 534 U.S. 516. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the U.S. Court of Appeals for the Sixth Circuit stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." See also Kitchen v. Ickes, 116 F.Supp.3d 613, 625–26 (D.Md. 2015) (refusing to allow claim to move forward premised on allegations contained in an ARP filed after plaintiff filed his complaint in federal court), aff'd, 644 F.App'x 243 (4th Cir. 2016).

Here, Defendants aver that Crisantos' filed only one administrative grievance related to alleged inadequate medical treatment he received at FCI-Cumberland. (Mem.

13

Law Supp. Defs.' Mot. Dismiss Alt. Summ. J. ["Defs.' Mot."] at 5, ECF No. 13-1). According to Defendants, Crisantos failed to pursue that lone grievance through all levels of administrative appeal. (Id.). Specifically, Crisantos "did not appeal the Mid-Atlantic Regional Office's response to the BOP's General Counsel in the Central Office," (id.), as required by 28 C.F.R. § 542.15(a). Defendants provide a declaration by Howard Williams, Legal Assistant at the BOP's Mid-Atlantic Regional Office, supporting these assertions. (ECF No. 13-3).

Crisantos does not include any specific descriptions of his administrative appeal efforts in his Complaint and has not filed an opposition. The Court views Defendants' description of Crisantos' failure to exhaust his administrative remedies as credible. In addition, the Court has reviewed the legal arguments raised in Defendants' unopposed Motion regarding the additional substantive deficiencies in Crisantos' Bivens claims and concludes that Defendants' arguments are meritorious. (See Defs.' Mot at 8–16). Accordingly, Defendants' Motion to Dismiss will be granted.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 13) and deny Crisantos' Motion for Extension of Time (ECF No. 24). A separate Order follows.

Entered this 21st day of December, 2020.

/s/
George L. Russell, III
United States District Judge